IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| V. | CAUSE NO. 3:12-CR-116-CWR-FKB-3 |
| GEORGE GUSTON, III | DEFENDANT |

**ORDER**

Before the Court are George Guston, III's motion for compassionate release and the government's motion to authorize payment from his inmate trust account. Docket Nos. 450 and 472. For the reasons that follow, Guston's motion is granted and the government's motion is granted in part.

**I.     Motion for Compassionate Release**

**A.     Background**

On March 28, 2013, George Guston, III pled guilty to one count of conspiracy to possess with intent to distribute 280 grams or more of cocaine base under 21 U.S.C. §§ 846, 841(b)(1)(A) and 851. That indictment included thirteen defendants describing their participation in the drug conspiracy charge through 15 counts.  On December 30, 2013, this Court sentenced him to 188 months' imprisonment, a supervised release term of three years, a fine of $2,000, and the $100 special assessment. The sentence was below the guidelines (235-293) and it reflected the resolution of arguments on pending motions.  Moreover, the sentence comported with 18 U.S.C. § 3553(a)'s parsimony principle, that is, the sentence was "sufficient, but not greater than necessary, to comply with the purposes of § 3553(a)(2)." On February 10, 2016, Guston's sentence was reduced to 151 months pursuant to 18 U.S.C. § 3582(c)(2), as his guidelines range had been lowered and made

retroactive by the United States Sentencing Commission. Guston is currently serving his sentence at Yazoo City Federal Correctional Institution's low-security section (FCI Yazoo City Low).

On May 5, 2020, Guston asked the Warden for release to home confinement. The Warden denied the request on June 18, 2020. On May 9, 2020, Guston asked the BOP to reconsider its decision. As of June 11, 2020, Guston's second request was unanswered.

Guston filed a motion for compassionate release in this Court on June 17, 2020. There is no dispute that Guston properly exhausted his administrative remedies.

Guston states that he is at high risk of suffering severe illness or death from the coronavirus because he has medical conditions including hypertension and high cholesterol and is pre-diabetic. He notes that FCI Yazoo City Low was at one point rated number one in the nation for COVID-19 cases among BOP facilities. Guston estimates that, at the time his motion was filed, no more than 40 percent of the over 1,600 people housed at FCI Yazoo City Low had been tested for COVID-19. Guston says that as of his writing, FCI Yazoo City Low has experienced three deaths. *Id.*

Under his existing sentence, Guston is eligible for home confinement on January 1, 2023 and is scheduled to be released from BOP custody on July 1, 2023.

The government opposes relief.

**B.     Law**

Guston's request is brought under 18 U.S.C. § 3582. The relevant part of that statute says that the Court:

> may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such

> a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A). A court must also consider the general sentencing factors contained in 18 U.S.C. § 3553. These factors include the nature and circumstances of the offense and the defendant; the necessity of the sentence to reflect the seriousness of the offense, deter other criminals, and protect the public; the kind of sentences available; and the need to avoid unwarranted sentencing disparities.

### C. Discussion

#### 1. Extraordinary and Compelling Reasons

United States Sentencing Guidelines § 1B1.13 outlines four circumstances that constitute "extraordinary and compelling reasons" and thus warrant a sentence reduction. These are: (1) the defendant's medical condition; (2) the defendant's age; (3) family circumstances; and (4) other reasons as determined by the Director of the BOP.[1]

While many courts have found that the threat of COVID-19 alone is not sufficient to warrant compassionate release, the "extraordinary" remedy of compassionate release may be applied to inmates whose situation is "particularized" as defined in the policy guidelines. *See United States v. Feiling*, No. 3:19cr112 (DJN), 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020).

In this case, Guston has presented evidence that his medical conditions present "extraordinary and compelling reasons" to release him from his current place of incarceration, FCI Yazoo City Low.

---

[1] This list of "extraordinary and compelling" circumstances is not exhaustive. *See United States v. Kelly*, No. 3:13-CR-59-CWR-LRA, 2020 WL 2104241, (S.D. Miss. May 1, 2020).

Guston is 45 years old and suffers from Type II diabetes and hypertension. *See* Docket No. 458 Exhibit 2.² According to the CDC, people with Type II diabetes are at a higher risk of serious illness or death if infected with COVID-19.³ Additionally, "[p]eople with high blood pressure or high cholesterol are more likely to suffer from Covid-19 complications because of problems with how the heart pumps blood around the body."⁴ The American Heart Association has also recognized the increased risk of COVID-19 for people with high blood pressure.⁵

At the time of this Order, there have been over 23.4 million cases of COVID-19 in the United States. Over 389,000 Americans have died. The risks to incarcerated persons are significant. "COVID-19 is particularly contagious in prisons because inmates are forced into close quarters without access to personal protective equipment." *United States v. Ramirez*, No. 17-10328, 2020 WL 2404858 (D. Mass. May 12, 2020) (citing CDC, *Social Distancing, Quarantine, and Isolation*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/social-distancing.html).

Guston is incarcerated at FCI Yazoo City Low, which at points during the COVID-19 pandemic had the highest number of COVID-19 cases in the BOP.⁶ In June 2020, the Marshall

---

² In his letter motion, Guston says he has hypertension and high cholesterol, and is *pre-diabetic*. *See* Docket No. 450 at 4 (emphasis added). However, his reply states that he has Type II Diabetes. *See* Docket No. 467 at 20. A review of Guston's medical records reveals a five-year or longer history of pre-diabetes that, in January 2020, developed into Type II diabetes mellitus. *See* Docket No. 458-2 at 64. Guston's list of health problems now includes Type 2 diabetes mellitus, as well as Type 2 diabetes mellitus with diabetic neuropathy. *See id.* at 45. Thus, Guston was added to the facility's diabetic clinic on January 23, 2020. *See id.* at 8. Though it quotes Guston's original letter motion for compassionate release, the government's response is therefore incorrect in describing Guston's condition as only pre-diabetes. *See* Docket No. 453 at 13.
³ CENTERS FOR DISEASE CONTROL AND PREVENTION, *People with Certain Medical Conditions*, (Oct. 16, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions html .
⁴ "Health Conditions That Put You At Risk Of COVID-19," MSN (March 18, 2020), available at https://www.msn.com/en-za/health/medical/health-conditions-that-put-you-at-risk-of-covid-19/ar-BB11lQqT.
⁵ "What people with high blood pressure need to know about COVID-19," Newsroom (March 31, 2020), available at https://newsroom.heart.org/news/what-people-with-high-blood-pressure-need-to-know-aboutcovid-19 (stating people with high blood pressure "may face an increased risk for severe complications if they get the virus").
⁶ *See* Margaret Baker, *Mississippi prison has highest number of COVID-19 cases in federal system*, SUN HERALD, (Apr. 21, 2020, 3:15 PM), https://www.sunherald.com/news/coronavirus/article242169531.html.

Project reported that Yazoo City's federal prison had experienced 173 cases among 3,902 inmates, 32 cases among staff, and three inmate deaths.[7] At the time, the case rate at Yazoo City's federal prison was more than seven times the case rate in the United States population.[8] Additionally, at the time of the article, BOP data showed that fewer than 10 percent of the inmates at FCI Yazoo City complex had been tested.[9]

Other courts have granted compassionate relief for inmates suffering from diabetes and hypertension. *See United States v. Lewis*, No. 16-CR-302, 2020 WL 2081374, at *1 (S.D.N.Y. Apr. 30, 2020) (finding extraordinary and compelling reasons for release because "[i]t [was] beyond dispute that Mr. Lewis is at high risk from COVID-19, as ... [his] diabetes is one of the most significant comorbidity factors and that is no doubt heightened by Mr. Lewis's high blood pressure."); *United States v. Colvin*, 451 F.Supp.3d 237, 241 (D. Conn. 2020) (Defendant with diabetes and high blood pressure demonstrated extraordinary and compelling reasons justifying her immediate release); *U.S. v. Rountree*, 460 F.Supp.3d 224, 325 (NDNY 2020) ("Here, in line with numerous other courts to have considered this issue, the Court finds that Rountree's diabetes and hypertension, in the face of the COVID-19 pandemic, satisfies either § 1B1.13's specific "medical condition" provision or its "catchall" provision.").

---

[7] Keri Blakinger & Keegan Hamilton, *"I Begged Them To Let Me Die": How Federal Prisons Became Coronavirus Death Traps*, THE MARSHALL PROJECT, (June 18, 2020, 7:00 AM), https://www.themarshallproject.org/2020/06/18/i-begged-them-to-let-me-die-how-federal-prisons-became-coronavirus-death-traps.

[8] Based on the Marshall Project's data, as of June 18, 2020, 4.43 percent of the inmate population had contracted COVID-19 during the pandemic. On June 18, 2020, the COVID Tracking Project reports that there had been 2,180,772 cases of COVID-19 in the US population. THE ATLANTIC, *The Covid Tracking Project*, (last accessed Oct. 28, 2020), https://covidtracking.com/data/national/cases. On June 18, 2020, the U.S. population was 329,811,981 according to the United States Census Bureau. UNITED STATES CENSUS BUREAU, (last accessed Oct. 28, 2020), https://www.census.gov/popclock/. Thus, on June 18, 2020, 0.61 percent of the U.S. population had been infected with COVID-19.

[9] Blakinger & Hamilton, *supra* note 7.

Courts have also granted compassionate release for defendants suffering from hypertension alone. "What the scientific community knows with relative certainty is that hypertension is one of the most common 'comorbidities' in people who experience severe cases of COVID-19, a fact that has been apparent since the early days of the pandemic; indeed, much research identifies hypertension as the most common comorbidity." *U.S. v. Salvagno*, 456 F.Supp.3d 420, 438 (NDNY 2020). "For many courts, this strong correlation [between hypertension and poor COVID-19 outcomes] has been sufficient to find that COVID-19 poses a heightened risk to hypertensive inmates, for purposes of compassionate release." *Id.* at 439-40; *see, e.g.*, *United States v. Lavy*, 17-CR-20033, 2020 WL 3218110, at *4 (D. Kan. June 15, 2020) (citing scientific studies); *United States v. Burke*, No. 17-CR-3089, 2020 WL 3000330, at *2 (D. Neb. June 4, 2020) (citing scientific studies); *United States v. Foreman*, No. 19-CR-62, 2020 WL 2315908 at *3–4 (D. Conn. May 11, 2020) (citing New York city and state data); *United States v. Pena*, No. 15-CR-551, 459 F.Supp.3d 544, —— (S.D.N.Y. May 8, 2020) (citing CDC data); *United States v. Pabon*, No. 17-CR-165, 458 F.Supp.3d 296, —— (E.D. Pa. May 4, 2020) (citing scientific articles and data from China, New York City, and New York State); *United States v. Soto*, No. 18-CR-10086, 2020 WL 2104787, at *2 (D. Mass. May 1, 2020) (citing WHO data); *United States v. Scparta*, No. 18-CR-578, —— F.Supp.3d ——, ——, 2020 WL 1910481, at *9 (S.D.N.Y. Apr. 20, 2020) (citing CDC data).

For these reasons, the Court concludes that Guston's particular health conditions qualify him for further consideration of compassionate release.

### 2. Safety to Others and Community

The analysis is not complete. A defendant seeking compassionate release must also demonstrate that he "is not a danger to the safety of any other person or to the community, as

provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13. "Section 3142(g) requires the court to consider factors such as the nature and circumstances of the charged offense, the history and characteristic of the defendant, and the nature of seriousness of the danger to a person or the community at large posed by the defendant's release." *Perdigao*, 2020 WL 1672322, at *2 (citing 18 U.S.C. § 3142(g)).

We already know that Guston pled guilty to one nonviolent crime. A more thorough examination of his circumstances shows one factor counseling against compassionate release, and many more favoring compassionate release.

The negative factor is a not-particularly-admirable criminal history. But, that criminal history was blotted with nearly twenty shoplifting convictions, only two of which were felonies. Additionally, the vast majority of his other crimes consisted of a variety of misdemeanors, and his last felony conviction was in February 2004 for possessing cocaine. Finally, after having been let go from his job after the then-owner of the *Jackson Advocate* passed away, "he began selling crack cocaine to support his drug habit." Docket 299, at 9. That criminal history was taken into consideration when this Court imposed its sentence. The Court noted that a significant portion of his criminal history, those shoplifting convictions, was tied to Guston's untreated substance abuse. Guston's presentence report reflects that Guston began using drugs at 12 years of age. Docket No. 299 at 25. Guston himself told the Court that his use of drugs caused him so much hurt and harm over his life. He was correct.

Guston's road to rehabilitation began while awaiting sentencing. Letters from pretrial detainees and others were submitted to and addressed by the Court at sentencing. Docket No. 299. While serving his sentence Guston has maintained a clean conduct record during approximately 98 months of incarceration. He writes in his motion that during his incarceration, "I have been

doing everything expected. Working, programming, mentoring to the community, and have no disciplinary or incident reports. I'm highly favored by the staff here, due to my character, work ethics [sic], responsibilities, and depenability [sic]." Docket No. 450 at 1. Guston has taken 39 education courses over these years. He writes that he has "learned a valuable lesson from [incarceration]. I've had time to review my life" and that he has done everything that this Court instructed him to do at his sentencing. *Id.* at 5.

Guston's Reentry Plan stated that "Mr. Guston is programming extremely well. He is currently enrolled in Piano, Yoga classes. He recently completed A Healthier Me in the BOP and Walking and Jogging class. He has maintained clear conduct and isn't considered a management concern." Docket No. 470-1 at 2.

Guston says he has a stable address he can be released to and has a job waiting for him at the Jackson Advocate Newspaper, where he worked before incarceration. Docket No. at 5.[10] He also notes that he has people to support him upon his reentry into the community. *Id.*

As in sentencing, these motions for compassionate release inevitably ask a judge to make a subjective evaluation balancing of past harms, present conduct, and future expectations. Many inmates cannot overcome that hurdle. *United States v. Brown*, 3:14-CR-64-CWR-FKB, Docket No. 135, (S.D. Miss. June 11, 2020) (denying compassionate release); *United States v. Frye*, 4:01-CR-8-CWR-FKB-2, Docket No. 680 (S.D. Miss. Oct. 26, 2020) (same). Here, however, the

---

[10] At his sentencing, Alice Tisdathe then publisher of the Jackson Advocate made a passionate plea for leniency for Guston She said that Guston was employed by the newspaper for seven years as graphic art designer, but he also took photographs and wrote articles. Because of change in management, Guston was terminated. That management was short-lived, and Guston was offered his job again, but by then he was on the "down slope." "I feel partially responsible for his giving up on life and returning to a life of crime," she said. Docket No. 299, at 27. She continued, "[w]hen you take away a man's livelihood, he is faced with many challenges. Ex-felons have little options as far as opportunity." *Id*. Ms. Tisdale concluded, "The Jackson Advocate stands by him to help him get back on track. The newspaper environment was his saving grace once, we'd like a second chance at it." *Id*. at 28.

available record spanning the last eight years of Guston's life suggests that Guston does not pose a risk to others if released.

### 3. Section 3553(a) Factors

"Section 3553(a) requires a court to consider certain factors when imposing a sentence, including the nature and circumstances of the offense and history and characteristics of the defendant, the need for the sentence, and the variety of sentences available." *Perdigao*, 2020 WL 1672322, at *4.

"Because this Court sentenced [Guston], the Court is intimately familiar with how these factors apply to his circumstances." *Scparta*, 2020 WL 1910481, at *8. Guston pled guilty and accepted responsibility for his conduct in person before this Court. There were no identifiable victims of the offense of his conviction.

Upon review of the parties' submissions and attachments, it appears Guston has used his time of incarceration to rehabilitate from the instant offense as well as reflect on his criminal history. His PSR reflects his struggle with substance abuse, a struggle that directly influenced his conduct in the instant offense and other offenses in his criminal history. Guston has taken drug education classes, though, and his health records reflect that his substance abuse disorders are in sustained remission. *See* Docket No. 458 at 45.

In light of the serious health risks Guston faces, the amount of time he has served on his sentence without incident, and the lack of danger he poses to the public, the Court finds the remainder of the sentence is unnecessary. Guston has been a model prisoner and seeks to continue his rehabilitation. Guston is well-situated to use his early release positively: he has stated he has a reentry plan with an address to be released to and a job and support network waiting for him. In

light of this record, a possible death sentence in prison from COVID-19 does not serve the ends of justice.

In short, the Court has considered the § 3553(a) factors in light of the extraordinary circumstances created by the COVID-19 pandemic, as applied to Guston's known health risks and behavior, and concludes that they warrant compassionate release in this case. Accordingly, his motion is granted.

## II.     Motion to Authorize Payment from Inmate Trust Account

Next is the government's motion. The Court is not aware of another case it has presided over where the government has sought such relief.

On review, the government's motion is well-taken and due to be granted in part. BOP shall transfer $500 of Guston's funds to the Clerk of the Court as partial payment toward his fines. This Court reminds Guston that, like most defendants, the remaining balance must be paid during his term of supervision. Failure to pay the remaining balance during that time may result in revocation.

## III.    Conclusion

The motion for compassionate release is granted, and the motion to authorize payment from Guston's inmate trust account is granted in part. George Guston, III is resentenced to time served. The Bureau of Prisons shall release him within 72 hours of this order. *See United States v. Atkinson*, No. 2:19-CR-55-JCM-CWH, 2020 WL 1904585, at *4 (D. Nev. Apr. 17, 2020). Guston's counsel shall coordinate with BOP to arrange transportation from the prison. *See id.* Within 72 hours of his release, Guston shall telephone the U.S. Probation Office to check in, but need not report in person. *See id.*

The original three-year term of supervised release and all of its conditions shall remain in place, with one addition. As a new condition of supervised release, upon his release from BOP custody, Guston is ordered to be quarantined to a location approved by the U.S. Probation Office for a period of 14 days.

**SO ORDERED**, this the 15th day of January, 2021.

s/ Carlton W. Reeves  
UNITED STATES DISTRICT JUDGE
